UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ROBERTA F.[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:20cv63 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social

Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based. The court shall have the power to

enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield, supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.      The claimant has not engaged in substantial gainful activity (SGA) since December 16, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*., and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: degenerative joint disease (DJD) of the bilateral knees (Exhibit 59F), status-post (s/p) history of left knee partial meniscectomy and arthroplasty (*i.e.* 2009 and January 5, 2015 (Exhibit 34F, page 4); lumbar degenerative disc disease (DDD), generalized osteoarthritis in multiple joints, fibromyalgia (Exhibit 26F, page 4), obesity (*i.e.* testimony for height of 5' and weight of 220 pounds), asthma/chronic obstructive pulmonary disease (COPD); bilateral carpal tunnel syndrome (CTS), s/p right carpal tunnel release/early osteoarthritic changes in the bilateral hands (Exhibit 26F, page 4, Exhibits 58F; 59F, page 12); and neuropathy (Exhibits 28F, page 3; 62F)(20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.)

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as reduced by the following. The claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but she can never climb ladders, ropes or scaffolds. The claimant should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, she should avoid concentrated exposure to unprotected heights and unguarded moving machinery, and she can frequently handle and finger with the bilateral upper extremities.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on December 16, 1965, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.156 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past

relevant work is unskilled (20CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual
        functional capacity, there are jobs that exist in significant numbers in the national
        economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969,
        and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act,
        from December 15, 2016, through the date of this decision (20 CFR 404.1520(g)
        and 416.920(g)).

(R. 957-976).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff  filed her opening brief on August 7, 2020.  On September 18, 2020 the defendant

filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on

October 16, 2020.[2] Upon full review of the record in this cause, this court is of the view that the

Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order:  (1)  Is the claimant
> presently unemployed?  (2)  Is the claimant's impairment "severe"?
> (3)  Does the impairment meet or exceed one of a list of specific
> impairments?  (4)  Is the claimant unable to perform his or her
> former occupation?  (5)  Is the claimant unable to perform any other
> work within the economy?  An affirmative answer leads either to the

---

[2] This case was assigned to the undersigned on January 25, 2021.

> next step or, on steps 3 and 5, to a finding that the claimant is
> disabled.  A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature

of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff filed applications for Title II and Title XVI benefits on November 14, 2014,

alleging disability beginning on July 31, 2014. (R. at 222-234). The Disability Determination

Bureau ("DDB") denied Plaintiff's claims on February 2, 2015. (R. at145-152). Plaintiff requested

reconsideration, but was again denied on April 7, 2015. (R. at 159-172). Plaintiff filed a request

for an administrative hearing on May 6, 2015. (R. at 173-174). On November 16, 2016, Plaintiff

appeared in Fort Wayne, Indiana before ALJ Stephanie Katich of the Fort Wayne, Indiana, Office

of Disability Adjudication and Review ("ODAR"). (R. at 42-88).

On April 18, 2017, ALJ Katich issued an unfavorable decision, concluding that Plaintiff

retained the capacity to perform work at the light exertional level. (R. at 25). Consequently,

Plaintiff filed a request for review by the Appeals Council of the Office of Disability

Adjudication and Review, but the Appeals Council later denied her request on July 16, 2017. (R.

at 1-6). Plaintiff then timely filed a complaint with this Court on September 6, 2017. (R. at 1114).

Additionally, Plaintiff filed a new application for Title II and Title XVI benefits on August 31,

2017. (R. at 964). On September 4, 2018, Judge Theresa L. Springmann issued an opinion

reversing and remanding Plaintiff's case back to the ALJ. (R. at 1112). In her opinion, Judge

Springmann noted that the court is "skeptical that the ALJ's step three analysis rises above the

level of 'perfunctory' and encourag[ed] the ALJ to give a more detailed explanation of her

reasoning." *Id*. After Plaintiff's case was remanded, the Appeals Council determined that

Plaintiff's subsequently filed August 31, 2017, applications for Title II and Title XVI benefits were

duplicate. (R. at 964). Therefore Plaintiff's claims were consolidated. (R. at 964).

On September 16, 2019, Plaintiff appeared in Fort Wayne, Indiana, for a second

administrative hearing before ALJ Katich. (R. at 1000). During this second hearing, Plaintiff

amended her alleged onset date to December 16, 2015. (R. at 1311). After Plaintiff's second

hearing with ALJ Katich, ALJ Katich again issued an unfavorable decision on November 18,

2019. (R. at 961). In her opinion, ALJ Katich again "afforded little weight" to the medical

opinions of Plaintiff's long-time primary care provider, Dr. Patel. (R. at 977). Plaintiff timely filed

the present complaint with this Court on February 7, 2020.

Plaintiff was born on December 16, 1965 and was 50 years old at the time of the amended

alleged onset date of December 16, 2015. (R. at 975). Plaintiff has obtained a high school

education and has previously worked as an order filler, machine tender, and packager. *Id*.

Plaintiff appeared for her second administrative hearing before ALJ Hon. Stephanie

Katich on September 16, 2019. (R. at 992). Plaintiff was represented at her hearing by attorney

Matthew Richter. *Id*. Also present at the administrative hearing was vocational expert Jacquelyn

Schabacker. *Id*.

Plaintiff has an extensive medical history, ranging from 2013 through 2019. The lengthy

record shows she has had treatment for, *inter alia*, carpal tunnel syndrome in both hands, tingling

and numbness in feet, generalized osteoarthritis, joint pain, limited range of motion, fibromyalgia,

numbness in fingers and hand, anxiety disorder, shortness of breath, headache, fatigue, blurry

vision, obstructive sleep apnea, hypertension, asthma/COPD, knee and leg pain, degenerative joint disease, neuropathy, abnormal reflexes, diabetes, disc protrusion at L4-L5, lower back pain and tenderness, chest pain, mild microvascular disease, vision disturbances in left eye, major depressive disorder, attention deficit disorder, mild cognitive disorder due to closed head injury, insomnia disorder due to pain and anxiety, grade 1 retrolisthesis at L4-5, mild levoscoliosis and disc height loss at L4-5 and L5-S1 with associated endplate osteophytes and lumbar facet degeneration, sciatica pain, trigger finger on right hand, bilateral knee crepitus, and obesity. Plaintiff's doctors have noted that Plaintiff is "in constant pain" and is "a troubled woman".

At the September 16, 2019 hearing, ALJ Katich began the hearing by questioning Plaintiff about her numerous diagnoses "including degenerative joint disease of bilateral knees." (R. at 995). Plaintiff informed ALJ Katich that she had previously received a partial meniscectomy and arthroplasty. (R. at 996). Plaintiff testified that she still experiences knee pain. *Id*. Plaintiff reported to ALJ Katich that her numerous medical diagnoses include painful impairments such as degenerative disc disease in the lumbar spine, lower back pain, "as well as what was described as generalized osteoarthritis in multiple joints, fibromyalgia, asthma and/or COPD, chronic obstructive pulmonary disease . . . bilateral carpal tunnel syndrome and what was described as neuropathy or other impairments , including chronic microvascular disease, headaches, hypertension, [and] hyperlipidemia." (R. at 996). Plaintiff explained that recent injections to treat her trigger finger were unsuccessful in improving her symptoms. (R. at 997). Plaintiff further testified to occasionally using a cane to maintain balance. *Id*. After describing her physical impairments, Plaintiff explained that she had been previously assessed with ADHD and depression. (R. at 999-1001). Plaintiff informed ALJ Katich that her prescription antidepressants did not

improve Plaintiff's depressive symptoms. (R. at 1000). Plaintiff informed the ALJ that she "would have to go to HR a lot because [Plaintiff] would start crying." (R. at 1001). Plaintiff attributed this to her anxiety. *Id*. Nevertheless, Plaintiff testified that her most bothersome symptoms were the "tingling and pain and burning" that Plaintiff experiences in her feet and knees. (R. at 1001-1002). Plaintiff further described swelling in her knees and pain in her lower back that was so severe that on one occasion, Plaintiff needed to go to the emergency room for treatment. (R. at 1002).

After questioning Plaintiff about her severe physical and mental impairments, ALJ Katich asked Plaintiff about her physical limitations.(R. at 1004-1005). Plaintiff informed the ALJ that Plaintiff could stand for less than ten minutes at a time and could walk for about two minutes at one time. *Id*. Furthermore, Plaintiff explained that she can only sit for about ten minutes before needing to stand. (R. at 1005). Plaintiff testified that she can lift or carry about ten pounds, but, even so, Plaintiff told the ALJ, "my hands go numb when I hold stuff." *Id*. Plaintiff told ALJ Katich that she is unable to work "because of pain," explaining "I have pain in my hands. I have a lot of pain in my knees, my feet, my back. I literally would be crying when I was working. At Wal-Mart I bought three pairs of shoes and I would change them every break." *Id*.

After ALJ Katich finished questioning Plaintiff, Mr. Richter, Plaintiff's attorney, asked Plaintiff about her previous medical treatment. (R. at 1007). Plaintiff testified that she had stopped her pain management treatment because "it would help and then you just have to take more and then more and it actually wasn't even helping [at] the end and then I started taking Lyrica which I think helped me some, but I was working and it made me so tired and dizzy and my blood pressure was high." *Id*. Plaintiff then explained that the heaviest object that she would be comfortable lifting in her daily life is a gallon of milk. (R. at 1008). Next, Mr. Richter asked Plaintiff about

difficulties she experiences with using her hands. *Id*. Plaintiff answered:

> I drop things. I'll be holding them and them my fingers just go numb.
> They're already kind of numb on my fingertips, but after a while it's
> like when your arm goes to sleep, it's my whole arm. Like past the
> elbow goes to sleep and I was holding my grandbaby and I dropped
> him and my daughter won't let me hold him.

(R. at 1008).

Plaintiff further testified that the limitations she was experiencing in her hand function

impaired her ability to engage in old pastimes like bowling. (R. 1009). Plaintiff also explained that

her hand numbness impairs her ability to cook for herself, describing one instance in which Plaintiff

dropped a hot pan and "burnt [herself] real bad on [her] chest." *Id*.

After Mr. Richter finished questioning Plaintiff, ALJ Katich began questioning vocational

expert Jacquelyn Schabacker. (R. at 1011). However, before beginning her questions, ALJ

Katich clarified that Plaintiff's previously determined past relevant work was characterized as an

order filler, machine tender, and packager, all of which were previously performed at the

medium exertional level generally and as performed. (R. at 1006).

After Ms. Schabacker was finished characterizing Plaintiff's past relevant work, ALJ

Katich asked questions about two different hypothetical individuals. First, the ALJ asked Ms.

Schabacker about a hypothetical individual with Plaintiff's education and past work who can

perform work at the light exertional level except:

> [the individual] can occasionally climb ramps and stairs. She can
> never climb ladders, ropes, or scaffolds. She can occasionally
> balance, stoop, kneel, crouch and crawl and she should avoid
> concentrated exposure to pulmonary irritants such as fumes, odors,
> dust, [or] gases. She should avoid concentrated exposure to
> unprotected heights and unguarded moving machinery . . . and she
> can frequently handle and finger with the bilateral upper extremities.

(R. at 1013-1014).

Ms. Schabacker testified that an individual with the restrictions above would be unable to perform any of Plaintiff's past work. (R. at 1014). However, Ms. Schabacker informed the ALJ that there are jobs available in significant numbers in the national economy that an individual with the restrictions above could perform. (R. at 1015). These occupations include representative occupations like photocopy machine operator, (DOT 207.685-014), SVP 2, and 70,000 available nationally; inspector/hand packager, (DOT 559.687-074), SVP 2, and 80,000 available nationally; and mail clerk, (DOT 209.687-026), SVP 2, and over 100,000 available nationally. *Id*.

After asking Ms. Schabacker about the first hypothetical individual, ALJ Katich asked Ms. Schabacker about a second hypothetical person with the same limitations indicated in the first hypothetical. (R. at 1016). However, the second hypothetical person would be limited to sedentary work activity. *Id*. Ms. Schabacker similarly testified that the second hypothetical individual would be unable to perform Plaintiff's previous work. *Id*. However, Ms. Schabacker further testified that there are jobs available in significant numbers in the national economy that an individual with the same restrictions as the second hypothetical individual could perform. (R. at 1017). Similarly, Ms. Schabacker listed representative sedentary occupations like document preparer, (DOT 249.587-018, SVP 2, and 20,000 available nationally; final assembler, (DOT 713.687-018), SVP 2, and 50,000 available nationally; and touchup screener, (DOT 726.684-110), SVP 2, and 42,000 available nationally. (R. at 1016-1017).

After Ms. Schabacker's testimony, Mr. Richter informed ALJ Katich that Plaintiff wanted to amend her alleged date of onset to December 15, 2014. (R. at 1018). Such an amendment

would make Plaintiff fifty years old throughout her period of disability.  (R. at 1019)  After this

amendment, ALJ Katich concluded Plaintiff's second administrative hearing. (R. at 2021).

In support of remand, Plaintiff first argues that the ALJ erred in offering only perfunctory

analysis with regard to whether Plaintiff met Listing 1.04A and also erred by failing to consult a

medical expert in regard to whether Plaintiff's combined impairments were medically equivalent to

the same.  At Step Three, an ALJ is required to determine whether the claimant meets or equals

any of the listed impairments found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P,

Appendix 1. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); 20 C.F.R. §

404.1520(a)(4)(iii). For each listed impairment, there are objective medical findings and other

specific requirements which must be met to satisfy the criteria of that Listing. 20 C.F.R. §§

404.1525(c)(2)-(3), 416.925(c)(2)-(3). When a claimant satisfies all such criteria, that person is

deemed presumptively disabled and entitled to benefits. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§

404.1525(a), 416.925(a), 404.1525(c)(3) and 416.925(c)(3).

Even if a claimant's impairment does not satisfy each requirement of the specified elements

of the listing, it can result in a finding of disability if the record contains "other findings related to

[the] impairment that are at least of equal medical significance to the required criteria" or if "the

findings related to [a combination of] impairments are at least of equal medical significance to

those of a listed impairment." 20 C.F.R. §§ 404.1526, 416.926. "In considering whether a

claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name

and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668. The Seventh

Circuit has held that "the ALJ may rely solely on opinions given in Disability Determination and

Transmittal forms and provide little additional explanation only so long as there is no contradictory

11

evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

Plaintiff points out that, in the present case, the ALJ did not specifically mention Listing 1.04A or any of its required criteria. Instead she conflated the criteria of different listings in evaluating whether Plaintiff's combined impairments met or medically equaled the intent of the musculoskeletal listings. Plaintiff contends that the ALJ's failure to even mention the listing most relevant to Plaintiff's condition, 1.04A, was likely due to the fact she never acknowledged Plaintiff exhibited that listing's threshold imaging criteria of nerve root compromise. (R. at 536, 741-742) The ALJ did not provide individual analysis for any of the musculoskeletal listings but, rather, stated:

> The medical evidence related to the claimant's back, lower extremity, CTS and generalized osteoarthritis in multiple joints does not support a finding that is unable to ambulate effectively, as defined in Medical Listing 1.00B2b or unable to perform fine/gross movements effectively as defined in Listing 1.00B2c. In addition, the medical evidence is unsupportive of the criteria contemplated with Listing 1.00 (musculoskeletal) for any of the listed conditions.

(R. at 963).

Plaintiff points out that such a perfunctory analysis does not provide this Court with any ability to engage in meaningful review as it does not evaluate any individual listing and dismisses all of the listings based on criteria which several of the musculoskeletal listings, including 1.04A, do not require: inability to ambulate effectively is requirement of 1.04C and the inability to engage in fine/gross manipulation is a requirement of 1.02B, neither are criteria required to meet or equal listing 1.04A[3]. Plaintiff strongly argues that the ALJ's proclamation that "the medical evidence is

_____

[3] To meet Listing 1.04A, the following criteria is required: Compromise of a nerve root (including the cauda equine) or spinal cord with nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if

unsupportive of the criteria contemplated within Listing 1.00 (musculoskeletal) for any of the listed conditions" is simply untrue. (R. at 963) Plaintiff points out that her medical providers observed her exhibition of nearly each of the criteria required to meet (as opposed to medically equal) listing 1.04(a): compromise of the L5 nerve root (R. at 536) and the thecal sac (R. at 741-742); anatomic distribution of pain as evidenced by complaints of radiation (R. at 374, 383, 399, 452, 504, 508, 618, 798, 1694, 1703) and EMG-confirmed abnormal EMG and nerve conduction study of the right upper and lower extremities (R. at 935); limited range of motion of the spine (372, 714, 510, 506, 621-622, 623, 761, 1653); motor loss/disturbed gait (R. at 621-622, 851); upper and lower extremity weakness (R. at 851, 1653, 1703); abnormal reflexes in all extremities (R. at 621-622, 851); sensory loss and numbness (R. at 621-622, 837, 383, 370, 380-381, 508, 1565, 1648, 1653, 1719, 1720).

Further, Plaintiff contends she had limitations which stemmed from the other 1.00 musculoskeletal listings, when combined with the 1.04A criteria she exhibited, could have been reasonably assessed to equal the intent of the listing: "high grade" osteoarthritis on the left and "moderate" on the right causing her knee surgeon to opine she would need a total knee replacement (R. at 939, 1645); fibromyalgia (R. at 957); and bilateral foot pain/neuropathy with EMG/NCV confirmation (R. at 894, 935). Thus Plaintiff maintains that the ALJ's failure to consider any of the criteria suggestive of Plaintiff's meeting or medically equaling listing 1.04A, especially the threshold imaging of nerve root compromise, resulted in the absence of the requisite logical and accurate bridge between the evidence and the conclusion that Plaintiff did not meet or

---

there is involvement of the lower back, positive straight-leg raising test. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.04A.

medically equal a listing. Plaintiff stresses that a claimant need not exhibit all of the listing criteria to medically equal a listing.

Plaintiff further argues that reversible error occurred because no medical expert, not even the state agency physicians, ever considered whether Plaintiff's combined impairments medically equaled Listing 1.04A. The Seventh Circuit has held that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); citing *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989). Here, the state agency physicians explicitly named the listings they considered when they reviewed Plaintiff's case and Listing 1.04A was not among them. (R. at 106, 135, 1068, 1081) Plaintiff contends that this failure was likely due to their lack of knowledge of Plaintiff's having exhibited 1.04A's threshold imaging criteria of nerve root or spinal cord compromise. (R. at 536, 741-742). While the state agency physicians mentioned the August 2013 MRI which demonstrated a disc bulge contacting the L5 nerve root, they did not mention this threshold finding, only acknowledging "osteoarthritis facet joints some disc degen." (R. at 109, 138, 536) No reviewing physician ever reviewed Plaintiff's 2014 or 2015 MRIs which Plaintiff argues showed compromise of the L5 nerve root and the thecal sac. (R. at 536, 741-742) Nor did they review imaging which could have led to a conclusion of medical equivalence to the listing: knee x-rays characterized as demonstrating "high-grade" osteoarthritis requiring total knee replacement or abnormal nerve conduction study of the right lower extremity. (R. at 935, 939, 1645)

The Seventh Circuit recently held that evidence of listing criteria, specifically imaging

14

which demonstrated similar threshold etiology as the lumbar MRIs in the instant case, not included

in the administrative record at the time of state agency review, required that an ALJ submit that

evidence to medical expert scrutiny with regard to the question of whether that claimant medically

equaled Listing 1.04(A), "an ALJ may not conclude, without medical input, that a claimant's most

recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry*

*v. Berryhill*, 911 F.3d 866, 871-872 (7th Cir. 2018); citing *Akin v. Berryhill*, 887 F.3d 314,

317-18 (7th Cir. 2018). Plaintiff maintains that the lack of medical expert review of the imaging

should have prompted the ALJ to subject it to expert scrutiny. This Court agrees.

       In response, the Commissioner points out that Plaintiff did not exhibit positive straight leg

raising which is required to meet (as opposed to equal) Listing 104A.  However, as discussed

above, it is not necessary to exhibit each of a listing's criteria to medically equal that listing.

Moreover, the Commissioner fails to note the possibility that Plaintiff's high-grade knee

osteroarthritis, another listed impairment (1.02), could allow for an equaling of 1.04A when

combined with her exhibition of all the lumbar spine criteria (except for a positive straight leg raise

test.) Plaintiff argues that it is scenarios like this for which the Seventh Circuit has concluded a

medical expert must opine on the question of medical equivalence to a listing. *Barnett v. Barnhart*,

381 F.3d 664, 670 (7th Cir. 2004); citing *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989).

Whether a listing is medically equaled by combined impairments is more complex than an

assessment of whether a claimant meets the listing as that only requires an observation of whether

the exact criteria is there and not a medical judgment. The Commissioner has offered no logical

reason why the evidence which arguably supports Plaintiff's equivalence to listing 1.04A should

not have been considered and opined upon by a medical expert. Thus, remand is necessary so a

medical expert can consider the question of whether Plaintiff's combined impairments were medically equal to Listing 1.04A.

Next, Plaintiff argues that the ALJ's conclusion that Plaintiff could perform the exertional requirements of "light work," as the Social Security Administration defines it, was unsupported by substantial evidence or the relevant legal standards.  Plaintiff contends that the ALJ's RFC analysis is fatally undermined by her stated agreement with and adoption of the physical RFC assessed by state agency consultants who were each uninformed of multiple items of objective imaging supportive of more restrictive limitations than they assessed. (R. at 89-144, 973, and 1055-1102) Plaintiff contends that neither set of reviewing medical experts had any knowledge of the following when they assessed their opinions of limitations because the evidence did not exist within the records they reviewed: 2014 Lumbar MRI demonstrating compromise of the L5 nerve root, threshold Listing 1.04A criteria; 2015 lumbar MRI demonstrating compromise the thecal sac, threshold listing 1.04A criteria; abnormal 2016 EMG/NCV of the right lower extremity (R. at 935); 2019 bilateral knee x-ray interpreted by treating surgeon as demonstrating "high grade" osteoarthritis on the left and "moderate" osteoarthritis on the right (R. at 1645); and the suggestion of two treating surgeon's that the demonstrated etiology required replacement of her knee (R. at 939, 1775). Plaintiff states that investigation of each of the aforementioned items of evidence demonstrate they were either entered into the record after the agency's reviewing physicians reviewed the record with regard to Plaintiff's initial application for disability benefits in 2015, or after the second set of state agency reviewing physicians reviewed Plaintiff's records with regard to her second application for benefits in 2018. As the RFC analysis was not based on all the record evidence, remand is warranted on this issue also.

16

Plaintiff next argues that the ALJ further committed reversible error in failing to provide a logical and accurate basis for discounting the opinion of Plaintiff's treating physician, Dr. Patel, that Plaintiff could at most perform "sit-down" work with significant manipulative restrictions. The Social Security Administration gives substantial deference to the opinions of treating physicians. A treating doctor's opinion must be given controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.2010). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Scott*, 647 F.3d at 739; *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306. Even if an ALJ does not give a treating physician's opinion controlling weight, the regulations still require her to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir, 2006); *Scott*, 647 F.3d at 740; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir.2009) (citing 20 C.F.R. § 404.1527(d)(2)). Plaintiff contends that no such consideration took place in this case and that the ALJ relied on illogical and wholly inaccurate rationales to discredit the opinion of Plaintiff's long-time treating physician.

The ALJ dismissed Dr. Patel's opinion that Plaintiff "cannot return to the work she was doing at the Walmart Distribution Center. I am not sure if she can do a sit down job to answer phone/type/use computer because of arthritis in hands and fingers and carpal tunnel syndrome." (R. at 720) Plaintiff notes that this opinion, while perhaps not unequivocal in Plaintiff's inability to

do sit-down work, does clearly indicate that the most Plaintiff could do would be "sit-down" or sedentary work. As the ALJ acknowledged during the administrative hearing, adoption of such an opinion limiting Plaintiff to a sedentary level of exertion would be disabling as of Plaintiff's 50th birthday per the Social Security Administration's medical vocational guidelines. (R. at 1017) In its remand of the ALJ's April 2018 denial of Plaintiff's disability benefits, this Court held that the ALJ did not properly evaluate this very opinion in that she failed to provide "good reason" for rejecting both the opinion that Plaintiff was limited to sedentary exertion and might even have trouble performing that sort of work due to her hand-related impairments. (R. at 1103-1112) With regard to her rejection of the opinion that Plaintiff was limited to "sit-down" or sedentary work, the ALJ again provided a wholly perfunctory rationale for dismissing the opinion. She wrote, "As to her inability to return to past medium exertion work at Walmart, the undersigned in fact agrees, as discussed more fully below, that the evidence does not reasonably support an ongoing inability to sustain light work." (R. at 968) Plaintiff argues that this explanation is wholly conclusory, contains no supportive evidence, and relies solely on the ALJ's own interpretation of a multitude of complex medical imaging. The ALJ's conclusion does not acknowledge the agreement of Plaintiff's treating surgeon, Dr. Rajmaira, that the etiology of her knees alone would limit her to work requiring only a "sedentary" exertion. This Court agrees with Plaintiff that remand is necessary so an ALJ may either adopt Dr. Patel's opinion that Plaintiff was limited to a sedentary level of exertion or provide "good reason" for rejecting that opinion.

An ALJ has one job in assessing whether to assign a treating source opinion "controlling weight," and that is to determine whether it is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue,* 647 F.3d 734, 739 (7th

Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.2011); *Campbell v. Astrue*, 627 F.3d

299, 306 (7th Cir.2010). Plaintiff notes that consistency with the record is supported by findings

alluded to in the ALJ's own decision which acknowledges Plaintiff had to have carpal tunnel

release surgery on her dominant hand in 2013. *Id.* At a July 2016 neurology exam, the doctor

observed "diffuse give and go weakness" of the upper extremities and abnormal reflexes. (R. at

851) During a functional capacity examination, the examiner noted Plaintiff's right dominant hand

was weaker than her left non-dominant hand (R. at 945), and the consultative examiner noted

bilateral edematous hands, abnormal reflexes in all extremities, and diminished right palmar

flexion. (R. at 621) Further, the ALJ, in dismissing disabling hand-related limitations, failed to

acknowledge the fact that Plaintiff's carpal tunnel release surgery did not resolve her issues, and

that her condition actually worsened after the procedure. Plaintiff continued to complain of

burning pain and numbness in her hands, and doctors observed tenderness and "early osteoarthritic

changes." (R. at 374,447,728-731, 726, 798, 827, 842) Her complaints of worsening post-surgery

pain were confirmed by a 2016 EMG which demonstrated she still had moderate carpal tunnel in

her right hand. (R. at 933) Also, the record is replete with positive Tinel's and Phalen's testing

which indicate a lack of sensation in Plaintiff's hands. (R. at 621-622, 837, 383, 370, 380-381,

508, 1565, 1648, 1653, 1719, 1720) Clearly, the ALJ's conclusion that there was "no documented

rationale" for the limitations assessed by Dr. Patel, without any logical analysis of this evidence

which is supportive of some limitations, fails to provide a logical and accurate explanation for

dismissing that portion of Dr. Patel's treating source opinion. Thus, remand is required.

Plaintiff also argues that the ALJ failed to provide a logical rationale for failing to afford

the opinion of Plaintiff's treating orthopedic surgeon "controlling weight." The ALJ appears

19

skeptical of Dr. Rajmaira's interpretation of Plaintiff's most recent bilateral knee x-rays which he concluded demonstrated "high grade osteoarthritis" on the left and "moderate" osteoarthritis on the right. (R. at 1645) Clearly, an ALJ is not entitled to make medical judgments or interpret complex imaging. Dr. Rajmaira ordered and reviewed Plaintiff's knee x-rays and concluded the existence of serious arthritis which he classified as "high grade" in the left knee. While he implied Plaintiff's knee required a total knee replacement, he concluded her obesity precluded that as a viable option. (R. at 1775) Four years earlier, another treating surgeon, Dr. Roper, opined Plaintiff would require a "total knee replacement" after he performed an arthroscopy on the same. (R. at 939) However, the ALJ concluded that Dr. Rajmaira's opinion was worthy of "little weight" because the primary "basis for support of this opinion is on the claimant's subjective allegations." (R. at 974) Plaintiff contends that the opinions of two treating surgeons that Plaintiff's knee osteoarthritis was "high grade" and required total knee replacement is based on objective imaging and medical expertise as opposed to Plaintiff's subjective complaints. Moreover, Plaintiff exhibited a number of correlating symptoms upon clinical examination: crepitus (R. at 1644); tenderness and swelling (R. 445, 449-450, 585, 726, 731, 1002); diminished range of motion (R. at 623-624); and disturbed gait (R. at 621-622, 851). In light of the aforementioned objective evidence, it is not clear what more the ALJ required to corroborate the opinions of Drs. Rajmaira and Patel that Plaintiff's impairments would limit her to "sit-down" or sedentary exertion work. The ALJ seems to rely on an interpretation of Plaintiff's knee x-rays which does not exist, a de facto medical judgment on her part. Such a rationale fails to provide a logical rationale for overturning the opinions of two medical doctors. Accordingly, remand is necessary so an ALJ may either adopt the opinions of Plaintiff's treating physicians that Plaintiff is limited to a sedentary level of

exertion, or provide some sound rationale for rejecting the opinions.

In response, the Commissioner offers up no resistance with regard to the portion of the doctors' opinions which suggests Plaintiff was limited to work of a "sedentary" exertion at most. In fact, the Commissioner appears to be under the mistaken impression that "the ALJ appropriately concluded Plaintiff could perform a reduced range of sedentary work with limitations on the use of her hands." However, such a conclusion would have resulted in an award of disability benefits as of Plaintiff's 50th birthday. The Commissioner provides no logical and accurate rationale for his conclusion that Dr. Patel's opinion limiting Plaintiff to sedentary exertion was not consistent with the record as a whole.

The Commissioner also defends the ALJ's perplexing conclusion that the surgeon's own interpretation of Plaintiff's most recent knee imaging could not be taken as fact because the physical x-rays are "not reflected in the evidence." The Commissioner then cites to older and less severe x-rays of Plaintiff's opposite knee as being contradictory to Dr. Rajmaira's interpretation, but those physical images are not in the record either.[4] (R. at 972, 1677) The Commissioner also ignores the fact that Dr. Rajmaira opined that Plaintiff needed a knee replacement.

Clearly, remand is required so that Plaintiff's treating physicians' opinions can be properly considered, as per the Regulations.

---

[4] This Court has noticed a disconcerting trend in Social Security cases in which the ALJs have seemingly assumed that the claimant and all of his/her treating physicians are being untruthful. This is an inappropriate burden to place on claimants and is not acceptable. The claimants testify under oath and the treating physicians likewise attest that they are providing accurate records. In the absence of clear contradictory evidence, claimants and their physicians are entitled to not have their testimony and records blatantly ignored, misconstrued and assumed unworthy of any credibility.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED, in accordance with the above Opinion.

In the event another hearing is held, such hearing shall be before an ALJ who has not previously worked on Plaintiff's request for benefits.

Entered: February 1, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court

22